# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **DEBORAH COFFEY ICENHOUR,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19CV00033 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THE TOWN OF ABINGDON, ET AL.** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, and Brittany M. Haddox,* STRELKA LAW OFFICE, *PC, Roanoke, Virginia, for Plaintiff; Ramesh Murthy and Cameron S. Bell,* PENN, STUART & ESKRIDGE, *Abingdon, Virginia, for Defendants.*

In this civil case, the plaintiff, a former Town Attorney, asserts claims against her former employer, the Town of Abingdon ("Town"), under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1983, along with two state-law defamation claims against a Town Council member, Cindy Patterson, and the Town.  The Town and Patterson have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Because I find that the plaintiff has failed to aver facts sufficient to make out any plausible claims, I will grant the Motion to Dismiss.

I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss.

Plaintiff Deborah Coffey Icenhour was hired by the Town as Assistant Town Attorney on October 8, 2007, and was appointed as Town Attorney on January 5, 2009. As Town Attorney, Icenhour also served as the Town's Freedom of Information Act ("FOIA") Officer. Her duties included managing requests under the Virginia Freedom of Information Act and preparing responses to the requests. During her employment, Icenhour was never disciplined, did not receive any poor performance reviews, and was never placed on a performance improvement plan.

In July 2016, Cindy Patterson and Wayne Craig began serving elected terms on the Town Council. They were publicly aligned with a group called Friends of Abingdon, which opposed a major commercial development in the Town. According to Icenhour, after Patterson and Craig joined the Town Council, the Town's inner workings grew increasingly politicized and the working environment became hostile and volatile. Icenhour alleges that Town Council members attempted to pit staff members against other staff members and against other Council members.

In Count I of her Complaint, Icenhour asserts a state-law defamation claim against Patterson and the Town. She alleges that during a September 5, 2017,

meeting of the Town Council, Patterson stated, "There have been more FOIA requests in recent years because the citizens don't trust the Town; they don't trust the FOIA Officer . . . . That's obvious." Compl. ¶ 23, ECF No. 1. According to the Complaint, Patterson had actual knowledge that this statement was false or made the statement with reckless disregard for whether it was false. The following day, the statement was published in a local newspaper and widely disseminated throughout the community. Icenhour alleges that she "has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to her professional and personal reputations, financial loss, and has been hampered in the conduct of her business and affairs" due to the statement. *Id.* ¶ 29.

Count II of the Complaint asserts a claim of defamation per se. Icenhour contends Patterson's statement is actionable per se because it suggested that Icenhour was unfit to perform the duties of the role of FOIA Officer. In addition to Patterson's statement, Icenhour alleges that in the early fall of 2016, Craig stated during a public work meeting of the Town Council that Icenhour was "in bed with Food City."[1] *Id.* ¶ 35. Icenhour claims that this statement suggested sexual promiscuity and an unfitness to perform the duties of her job. She again alleges that these remarks caused her to suffer "humiliation, embarrassment, mortification,

---

[1] Food City is the brand name for a grocery store chain affiliated with the development that Friends of Abingdon opposed.

shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to her professional and personal reputations, financial loss," and she "has been hampered in the conduct of her business and affairs." *Id.* ¶ 37.

In Count III, Icenhour claims that the Town deprived her of a liberty interest in violation of 42 U.S.C. § 1983. This claim, too, is based on the statements of Patterson and Craig. Icenhour alleges that their statements applied a stigma to her professional reputation.

Icenhour further alleges that following these statements, increasingly hostile behavior led to her constructive discharge on July 14, 2018. Icenhour gives the following examples of hostile behavior by Town Council members that occurred continuously from the time of the statements to Icenhour's constructive discharge:

    a. Raised angered voices;

    b. Overt threats of job security;

    c. Frequent attempts to undermine Ms. Icenhour at the workplace by pitting staff members against one another;

    d. Falsely accusing Ms. Icenhour of stealing Town property;

    e. Falsely accusing Ms. Icenhour of trespassing on Town property.

*Id.* ¶ 43. Icenhour alleges that she

> attempted to resolve her issues with the Town, but, upon information and belief, Ms. Patterson and other town officials continuously made statements critical of [her] work performance, and false statements regarding [her] character and her credibility to members of the public on multiple occasions leading up to [her] separation from employment.

*Id.* ¶ 44. These statements also allegedly placed a stigma on Icenhour's reputation and contributed to the hostile working environment that led to her constructive discharge.

Counts IV through VI assert claims under the Americans with Disabilities Act. Icenhour suffers from anxiety, depression, and metalosis, "a toxic blood condition in which exorbitant levels of metals (cobalt and chromium usually originating from an orthopaedic prosthesis) enter the bloodstream and deprive muscle and bone tissue of oxygen, thereby causing the same to deteriorate." *Id.* ¶ 50. These disabilities affect her daily life activities of ambulating, working, standing, sitting, speaking, and concentrating. She contends that her conditions were "exacerbated due to the often unprofessional and occasionally outrageous actions of several of her supervisors, the Abingdon Town Council Members." *Id.* ¶ 51.

In Count IV, Icenhour claims that the Town discriminated against her because of her disabilities. On January 10, 2018, counsel representing Icenhour sent a letter to counsel representing the Town that requested twelve accommodations for Icenhour's disabilities. The Complaint does not set forth the substance of those requests. According to the Complaint, the Town refused to engage in an interactive process with Icenhour in order to find reasonable accommodations. Icenhour received a letter from the Town's counsel

approximately three months later stating that the Town would engage in an interactive process. However, when Icenhour attempted to communicate further with the Town regarding her requested accommodations, she received no reply.

Icenhour was often required to work additional hours to fulfill her duties as FOIA officer, a role she occupied for approximately ten years in addition to serving as the Town Attorney. She alleges that due to disability discrimination, retaliation, and sex discrimination, the Town appointed a male employee, Floyd Bailey, as an additional FOIA officer. Icenhour alleges Bailey essentially replaced her in that role. Bailey was given a pay raise for serving as a FOIA officer, but Icenhour had never received any additional pay for that role. Bailey had no knowledge of FOIA matters prior to his appointment as a FOIA officer, and Icenhour was required to train him.

Icenhour filed charges of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") on September 12, 2017; December 22, 2017; and July 31, 2018. She filed this suit within 90 days of receiving a Dismissal and Notice of Rights letter regarding the final charge. The Complaint does not set forth the contents of any of the three charges.

The Complaint states, with no supporting details, that Icenhour could perform the essential functions of her job with an accommodation and that she "revealed her disability to her supervisors at the Town of Abingdon, and requested

a myriad of possible and reasonable accommodations." *Id.* ¶ 69. She asserts that the Town discriminated against her

> by refusing to appropriately engage in a dialogue with her for months in regard to disability accommodations, intimidating and discouraging [her] from pursuing her accommodation requests, and essentially denying [her] accommodation requests by ignoring them for an extended period of time, ultimately resulting in [her] unlawful constructive discharge from employment.

*Id.* ¶ 70. She alleges that she would not have been constructively discharged if not for her disabilities, accommodation requests, and filing of charges with the EEOC.

Count V is similar to Count IV but asserts a claim of retaliation under the ADA. It alleges that Icenhour engaged in protected activities when she filed charges of discrimination with the EEOC and requested accommodations and that the Town retaliated against her by failing to engage in an interactive process, discouraging her from pursuing her accommodation requests, and denying her request for accommodations.

Count VI is a failure to accommodate claim based on the Town's failure to engage in an interactive process to identify reasonable accommodations. Here, Icenhour alleges that the failure to accommodate "created an atmosphere hostile to [her] and paved the way to a constructive discharge." *Id.* ¶ 98.

In Count VII, Icenhour asserts against the Town a claim of sex discrimination under Title VII. She alleges that she was treated differently from similarly situated male employees, particularly with respect to pay. She also

alleges, with no further explanation, that the Town's "policies, practices, and/or procedures have had a disparate impact on [her] with respect to the terms and conditions of her employment." *Id.* ¶ 104. She asserts that in late February 2017, Craig asked her, "how is your estrogen level?" *Id.* ¶ 105. Several months earlier, he had stated during a public work meeting that she was "in bed with Food City." *Id.* Count VIII asserted a claim of sex-based wage discrimination under the Equal Pay Act, but Icenhour verbally withdrew that claim at oral argument.

The Town and Patterson have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss has been fully briefed and orally argued and is ripe for decision.

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a motion to dismiss, the plaintiff must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts.

*Id*. A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### A. *Defamation Claims.*

The Town and Patterson argue that they are entitled to either absolute or qualified immunity as to Icenhour's defamation claims. Icenhour responds that immunity does not apply to intentional torts like defamation and that Patterson's statement was not made in conjunction with creating legislation, taking it outside the realm of immunity. The Town further argues that Patterson's statement merely conveyed her opinion and is not provably false. Icenhour disagrees.

Under Virginia law, "[i]n order to assert a claim of defamation, the plaintiff must first show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Lewis v. Kei*, 708 S.E.2d 884, 891 (Va. 2011). "The plaintiff also must show that the defendant knew that the statement was false, or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based." *Id*. "When a plaintiff asserts that the

defendant acted negligently, the plaintiff must further prove that the defamatory statement made apparent a substantial danger to the plaintiff's reputation." *Id.*

> At common law, defamatory words that prejudice a person in his or her profession or trade are actionable as defamation *per se*. A defamatory statement may be made by inference, implication or insinuation. However . . . speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.

*Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 861 (Va. 2003) (internal quotation marks, citations, and alterations omitted). In deciding whether a statement is defamatory, I must "consider not only the words themselves but also the inferences fairly attributable to them." *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005) (internal quotation marks and citation omitted).

Statements of opinion cannot form the basis of a defamation claim. *Lewis*, 708 S.E.2d at 891. The court determines as a matter of law whether a statement is one of fact or opinion. *Id.* "[T]he court must evaluate all of the statements attributed to the defendant and determine whether, taken as a whole, a jury could find that defendant knew or should have known that the factual elements of the statements were false and defamatory." *Id.* The question is not whether the statement is true or false, "but whether it is capable of being proved true or false." *Tharpe v. Saunders*, 737 S.E.2d 890, 893 (Va. 2013). "When a speaker plainly expresses a subjective view, an interpretation, a theory, conjecture or surmise,

- 10 -

rather than a claim to be in possession of objectively verifiable false facts, the statement is not actionable." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (internal quotation marks, citation, and alterations omitted).

Virginia law provides absolute immunity for certain statements – even those that are false and maliciously made – when they are made in select settings. *Isle of Wight Cty. v. Nogiec*, 704 S.E.2d 83, 88 (Va. 2011). One of those settings is a proceeding of a legislative body. *Id.* The Supreme Court of Virginia has held that this privilege is limited to proceedings in which "the legislative body is acting in its legislative capacity — i.e., when it is creating legislation — rather than in its supervisory or administrative capacity." *Id.* at 89.

> Assuming, without deciding, that absolute privilege is afforded to subordinate legislative bodies, the creation of legislation is the nexus that supports the application of the privilege. Absolute privilege therefore does not attach to communications made by participants in proceedings conducted by a board of supervisors that do not concern the creation of legislation.

*Id.* at 90.

Qualified immunity is far broader in its application. It "attaches to communications between persons on a subject in which the persons have an interest or duty." *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (internal quotation marks, citation, and alterations omitted). "However, the privilege attaching to such occasions is a qualified privilege which may be defeated if the plaintiff proves that the defamatory statement was made maliciously." *Larimore v.*

*Blaylock*, 528 S.E.2d 119, 121 (Va. 2000). "Once a qualified privilege has attached to a communication, the plaintiff has the burden to prove that the privilege has been lost or abused," which can be done by showing that the statement was made with malice. *Cashion*, 749 S.E.2d at 532. "[T]he issue of whether there was malice is a question of fact for the jury, and a showing of pre-existing personal spite or ill will is only one of several ways in which a privilege can be lost." *Id.* Malice can also be proved by showing that "the statements were made with knowledge that they were false or with reckless disregard for their truth." *Id.* at 533.

> In addition to common-law qualified privilege, a Virginia statute provides,
>
> A person shall be immune from civil liability for . . . a claim of defamation based solely on statements . . . made at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local government entity concerning matters properly before such body. The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

Va. Code Ann. § 8.01-223.2(A). Courts have not considered whether this privilege is coextensive with Virginia common-law qualified immunity, and the parties have not briefed this issue.

The Supreme Court of Virginia has stated that immunity does not apply to intentional torts. *Fox v. Deese*, 362, S.E.2d 699, 705 (Va. 1987). The *Fox* court

clarified in a footnote that "[a]lthough this principle applies to most intentional torts, it is not necessarily applicable to all." *Id.* at 706 n.4. Icenhour has not pointed the court to any cases in which this principle has been applied to a defamation claim, and I decline to apply it here.

As noted in *Isle of Wight Cty. v. Nogiec*, *supra*, the Supreme Court of Virginia has not yet conclusively decided whether absolute privilege applies to statements made during meetings of subordinate legislative bodies such as the Town Council. I am therefore hesitant to dismiss Icenhour's defamation claims on the ground of absolute immunity. However, if the absolute privilege does apply to statements made at Town Council meetings, it would likely apply to Patterson's statement.

The newspaper article attached to the Complaint provides additional details about Patterson's proposal and statement. "At Tuesday's Town Council meeting, Councilwoman Cindy Patterson proposed that a citizen board be created to review how the Town handles its FOIA requests by making government information available to citizens. She recommended the council consider the proposal during the mid-monthly work session on Nov. 15." Compl. Ex. B, ECF No. 1-3. The newspaper article goes on to state, "Patterson said there is a 'gray area' within the Town's FOIA policies, as the 'FOIA officer can disclose or not disclose information to their specifications,' she said." *Id.*

The proposed citizen board would presumably have to be created by ordinance, resolution, or other local legislation. Thus, it appears that Patterson was proposing the creation of legislation when she made the allegedly defamatory statement, which would bring the statement within the scope of absolute legislative privilege.

Regardless of whether the statement is entitled to absolute privilege, it is certainly entitled to qualified privilege unless Icenhour can show that the privilege has been lost. As a Town Council member speaking to fellow Council members and Town citizens, Patterson certainly had an interest and duty in discussing FOIA requests and the Town's responses to them. But Icenhour has alleged, albeit weakly, that Patterson held some preexisting ill-will or spite toward her, and the issue of whether common-law qualified immunity has been defeated by malice on the part of the speaker is generally a question for the jury.

In any event, Icenhour's defamation claims fail because the allegedly defamatory statement is not capable of being proved true or false. The newspaper article states, "According to Icenhour, the town has received between 100 and 125 FOIA requests in the past year. Six years ago, the average was around 50 requests per year, she added." *Id.* It thus does not appear that Icenhour contests the portion of Patterson's statement asserting that there had been a marked increase in the number of FOIA requests received by the Town. The only part of the statement

that Icenhour claims is defamatory is Patterson's theory about the reason for the increase.

The article quotes Patterson as saying, "'There have been more FOIA requests in recent years because the citizens don't trust the Town; they don't trust the FOIA officer. That's obvious.' Patterson said. 'The numbers [of requests] show that.'" *Id.* It is clear from Patterson's statement that she was simply giving her opinion of the reason for the increase, based not on any quantifiable data regarding the motivations of Town citizens, but solely on her own conjecture. This statement is not capable of being proved true or false. The Town of Abingdon has thousands of residents, and it would be practically impossible to interview all of them and determine whether they did or did not trust Icenhour as the Town's FOIA officer. No reasonable person hearing Patterson's statement would have thought that she made the statement based on anything other than her own opinion and perhaps a few anecdotal conversations with an unrepresentative sample of Town citizens.

Although she claims that Patterson's statement is provably false, Icenhour does not explain how she would prove that the statement is false. Instead, she simply offers her own theory for the reason behind the increase in FOIA requests: it "likely related to the Town residents' concern over how taxpayer money was being spent on particular economic development projects." Pl.'s Br. Opp'n 10,

ECF No. 9. This theory is no more provable than Patterson's. Because Patterson's statement is not provably false, it is not actionable. I will therefore grant the Motion to Dismiss as to Counts I and II.

### B. Deprivation of Liberty Interest.

False allegations made by a public employer can give rise to due process concerns when the employer has effectively deprived the employee of her "freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). "For this reason, a Fourteenth Amendment liberty interest is implicated by public announcement of reasons for an employee's discharge." *Sciolino v. City of Newport News,* 480 F.3d 642, 645–46 (4th Cir. 2007) (internal quotation marks and citation omitted). For a plaintiff to successfully show that her liberty interests were violated, she must show that her employer made statements that "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Id.* at 646. For charges to be sufficiently stigmatizing to implicate constitutionally protected liberty interests, they "must at least imply the existence of serious character defects such as dishonesty or immorality that might seriously damage the plaintiff's standing and associations in his community or foreclose his freedom to take advantage of other employment opportunities." *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (internal

quotation marks, citations, and alterations omitted). Allegations of incompetence or unsatisfactory job performance are not sufficiently stigmatizing to establish a deprivation of a liberty interest. *Id.*

To the extent Count III is based on Patterson's statement that Town citizens did not trust the FOIA officer, the claim fails because the statement is neither provably false nor sufficiently stigmatizing. The statement does not indicate why citizens might not have trusted Icenhour, nor does it imply that she had done anything immoral to warrant such distrust. Moreover, Icenhour alleges that Patterson made her statement on September 5, 2017, but her employment did not terminate until July 14, 2018, more than ten months later. The Complaint contains insufficient factual allegations to tie the September 5, 2017, statement to Icenhour's later alleged constructive discharge.

To the extent Count III is based on Craig's alleged fall 2016 statement that Icenhour was "in bed with Food City," this statement is even more remote in time from Icenhour's alleged constructive discharge, having occurred approximately a year and ten months earlier. Again, the Complaint alleges insufficient facts to tie this apparently stray comment by an individual Town Council member to Icenhour's much later termination of employment. As to Craig's statement, Icenhour fails to satisfy the third element set forth in *Sciolino*.

Icenhour also alleges that unspecified persons falsely accused her of stealing Town property and trespassing on Town property. She does not allege to whom these statements were made. Therefore, as to these alleged statements, Icenhour has not satisfied the second element of her due process claim, as she has not averred that the statements were made public. Her vague allegation that "Ms. Patterson and other town officials continuously made statements critical of [her] work performance, and false statements regarding [her] character and her credibility to members of the public on multiple occasions," Compl. ¶ 44, is too conclusory and devoid of facts to state a plausible claim of deprivation of a liberty interest.

Moreover, Icenhour has not alleged that she took advantage of the available grievance procedure, requested a hearing either before or after her employment terminated, or that she was denied a hearing. *See Owen v. City of Indep.*, 445 U.S. 622, 661 (1980) ("Due process requires a hearing on the discharge of a government employee if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination.") (internal quotation marks, citation and alterations omitted); *Bd. of Regents of State Colls.*, 408 U.S. at 569 (explaining that when a constitutional liberty interest is implicated, a hearing is required). Because she has not pled facts showing the essential

elements of a claim of deprivation of liberty interest, I will grant the Motion to Dismiss as to Count III.

C.     *Timeliness of ADA Claims.*

The Town argues that to the extent any of Icenhour's ADA claims are based on allegations that were contained in her first two EEOC charges, those claims are untimely because she failed to file suit within 90 days of receiving Dismissal and Notice of Rights letters from the EEOC regarding those charges. Icenhour responds that all three of her EEOC charges pertained to the same ongoing course of conduct, and the continuing violation doctrine therefore renders her claims timely because she filed suit within 90 days of receiving a Dismissal and Notice of Rights letter regarding her third and final EEOC claim.

An employee who files a charge with the EEOC alleging violation of rights under the ADA must file suit in federal court within 90 days of the date the EEOC notifies the employee that the charge has been dismissed. 42 U.S.C. § 2000e-5(f)(1). Icenhour concedes that she did not file suit within 90 days of receiving Dismissal and Notice of Rights letters related to her first two EEOC charges. A number of courts have held that when a plaintiff has filed a series of EEOC charges but has not filed suit within 90 days of dismissal of the earlier-filed charges, the notice of dismissal of the final charge does not serve to revive time-barred claims raised in the earlier charges. *See, e.g.*, *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452,

460 (6th Cir. 2001); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 203

(E.D.N.Y. 2014); *Woods v. Lancaster Indep. Sch. Dist.*, 834 F. Supp. 2d 512, 516

(N.D. Tex. 2011); *Felix v. City & Cty. of Denver*, 729 F. Supp. 2d 1243, 1250-51

(D. Colo. 2010).

"[T]he continuing violation theory does not eliminate the requirement that a

plaintiff file a judicial action within ninety days of receipt of notice of the right to

sue." *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir.

1991). The continuing violation doctrine, which tolls the statute of limitations for

filing a claim with the EEOC, is meant to ensure "that meritorious discrimination

claims are not pretermitted because the claimant needed to experience a pattern of

repeated acts before she could be expected to realize that the individual acts were

discriminatory in nature." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139,

144 (1st Cir. 2012).

> This purpose would not be served by extending the 90-day
> filing period . . . . By the time that she receives a right-to-sue notice, a
> claimant is necessarily aware of the defendant's discriminatory
> conduct; she has by then already recognized the occurrence of
> discrimination and filed her administrative claim.

*Id.*; *see also Gibbs v. Gen. Motors Corp.*, 104 F. App'x 580, 528 (7th Cir. 2004)

(unpublished) ("Gibbs cannot avail herself of the continuing-violation doctrine

because she obviously believed that the time-barred acts were discriminatory when

she filed EEOC charges in early 2001.").

I agree with these decisions and am inclined to conclude that the claims raised in Icenhour's first two EEOC charges are now time-barred. The problem is that the Complaint contains no information about the claims of those two EEOC charges, nor does it set forth the contents of Icenhour's third EEOC charge, on which this suit is presumably based. I therefore cannot rule on whether any or all of Icenhour's ADA claims asserted in this case are time-barred. The plaintiff has not provided the court with the information necessary to find that she timely filed suit on the claims she has asserted here.

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Therefore, the question of whether a claim is time-barred usually cannot be resolved on a motion to dismiss, except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* Those circumstances are not present here, so I will deny the Motion to Dismiss on statute of limitations grounds.

### D.    *Disability Discrimination.*

The ADA protects qualified individuals with disabilities from discrimination on the basis of their disabilities. 42 U.S.C. § 12112(a); *Rohan v. Networks*

*Presentations LLC*, 375 F.3d 266, 278-79 (4th Cir. 2004).  A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

> In an ADA wrongful discharge case, a plaintiff establishes a *prima facie* case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).

In this case, Icenhour claims that she was constructively discharged.  "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks and citation omitted).  In such a situation, the law will treat the employee's resignation as a discharge.  *Id.*

"In assessing intolerability, the frequency of the conditions at issue is important."  *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).  "[W]hen the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability."  *Id.*  "Further, difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign."  *Id.*  The

question is not whether resigning was the plaintiff's wisest or best choice under the circumstances, but rather whether a reasonable person in the plaintiff's position "would have had *no choice* but to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (internal quotation marks and citation omitted). This standard is higher than the severity or pervasiveness required to prove a hostile environment harassment claim. *Id.*

Icenhour's allegations supporting her constructive discharge theory are largely devoid of details and conclusory. The few specific facts that she does allege do not amount to the kind of intolerable working conditions necessary to support a finding of constructive discharge. The Town's failure to timely respond to a letter from Icenhour's counsel, even coupled with the political in-fighting and unpleasant work environment she describes, would not have left a reasonable employee in Icenhour's position to conclude she had no choice but to resign. Interpersonal workplace grievances, friction between an employee and her supervisors, and pointed criticism of the employee's performance, even when communicated in "[r]aised angered voices," *see* Compl. ¶ 43, do not create a constructive discharge.

To survive a motion to dismiss, Icenhour's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp.*, 550 U.S.

at 555, 570.  The sparse, imprecise allegations set forth in the Complaint do not satisfy that test.  Icenhour has not plausibly alleged that she was constructively discharged.  As this is a required element of her disability discrimination claim under the ADA, I will dismiss Count IV for failure to state a claim upon which relief can be granted.

Even if the allegations were sufficient to establish a constructive discharge, Count IV would fail because Icenhour has not plausibly alleged that she could perform the requirements of her job with or without reasonable accommodations.  She identifies her disabilities but does not indicate how they affected her ability to perform her roles of Town Attorney or FOIA Officer.  While she states in a conclusory fashion that she requested reasonable accommodations, she does not allege what those accommodations were or how they might have assisted her in performing her job.  She therefore has not plausibly alleged that she is a qualified individual with a disability.  For these reasons as well, I will grant the Motion to Dismiss as to Count IV.

Perhaps most importantly, the Complaint states no facts that raise a reasonable inference of disability-based discrimination.  Icenhour cannot rely solely on her own speculation that she was mistreated due to her disabilities.  She must allege some facts tending to show that the mistreatment she claims to have

suffered was causally related to her disabilities. Because she has not done so, her claim of disability discrimination must be dismissed.

*E.    Retaliation.*

To establish a claim of retaliation under the ADA, a plaintiff must show that "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Icenhour's retaliation claim suffers from shortcomings similar to those that plague her discrimination claim.

Icenhour alleges that she engaged in protected activity when she requested accommodations and filed charges with the EEOC. She alleges that she suffered an adverse action in the form of constructive discharge. As I have already held, the allegations in the Complaint are insufficient to establish the intolerability necessary to establish a constructive discharge. Additionally, beyond conclusory statements, Icenhour alleges no facts tending to show a causal link between her protected activity and the termination of her employment.

Icenhour also alleges that she suffered adverse actions when the Town declined to grant her requests for accommodations and discouraged her from pursuing her accommodation requests. Assuming without deciding that these acts could serve as adverse actions, there are simply not enough facts alleged in the

Complaint to make this claim plausible. Again, Icenhour has failed to allege what accommodations she requested and has not attached to her Complaint the letters exchanged between her counsel and the Town's counsel. She has not asserted any facts in support of her conclusory allegation that the Town discouraged her from pursing accommodation requests.

While a plaintiff is not required to prove her case in her complaint, she must allege enough facts to make her right to relief more than speculative. Icenhour has not met that standard. Because she has failed to state a plausible claim of retaliation under the ADA, I will grant the Motion to Dismiss as to Count V.

## F.     Failure to Accommodate.

The ADA requires an employer to "make reasonable accommodations for an applicant or an employee's disability." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008). The applicable regulation provides:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3). To state a claim for failure to accommodate, a plaintiff must plausibly allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the

position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks, citations, and alterations omitted).

Icenhour's failure to accommodate claim must be dismissed because she has not alleged facts showing that she could perform the essential functions of her job with reasonable accommodations. As noted above, she does not allege what the essential functions of her job were, nor does she state if or how her disabilities impacted her in the workplace. She has not identified any accommodation, reasonable or otherwise, that could have allowed her to perform the essential functions of her job.

Icenhour suggests that the Town is liable for failure to accommodate simply because it did not engage in an interactive process with her. The Fourth Circuit has rejected that argument. "[E]ven if an employer's duty to engage in the interactive process is triggered, the employer's liability for failing to engage in that process may collapse for a number of reasons," including "if the employee cannot identify a reasonable accommodation that would have been possible" or if the employer and employee could not have found a reasonable accommodation that would have allowed the employee to perform the essential job functions. *Id.* at 347. "[A]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Walter v.*

*United Airlines, Inc.*, No. 99-2622, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000) (unpublished).  Instead, the plaintiff is required to show that "the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee."  *Id.*

The vague and conclusory allegations in the Complaint are insufficient to state a plausible failure-to-accommodate claim.  I will grant the Motion to Dismiss as to Count VI.

### G.    *Sex Discrimination.*

Icenhour lastly asserts a sex-based wage discrimination claim under Title VII.  This claim appears to be based on the allegation that Bailey received a pay raise when he was appointed as an additional FOIA Officer, while she did not receive any additional pay for her duties as FOIA Officer.  The Complaint alleges no other comparator and no further facts regarding either Icenhour's or Bailey's salary, experience, qualifications, or other duties.  Count VII does not purport to assert a hostile environment harassment claim, but it nevertheless alleges that Craig asked Icenhour about her estrogen level and stated that she was "in bed with Food City."  Compl. ¶ 105, ECF No. 1.

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" in order to survive a motion to dismiss.  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir.

2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)). Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555).

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). While the Complaint makes a conclusory passing reference to disparate impact, it contains no factual allegations that would support a disparate impact discrimination claim.

Title VII prohibits an employer from discriminating against an employee because of sex, including with respect to compensation. 42 U.S.C. § 20003-2(a)(1). Title VII requires establishing intentional discrimination through one of two mechanisms. A plaintiff can either produce direct or circumstantial evidence of discrimination or utilize the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "to develop an inferential case of discriminatory intent." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (internal quotation marks and citation omitted). Under *McDonnell Douglas*, to establish a prima facie case of gender-based wage discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance;

(3) an adverse employment action; and (4) circumstances that suggest an unlawfully discriminatory motive. *Spencer*, 919 F.3d at 207. When a plaintiff bases her claim of wage discrimination on comparators, she "must show that she is paid less than men in similar jobs." *Id.*

Icenhour has not alleged any facts from which I could infer that she was similarly situated to Bailey. She has not even alleged that he was paid more than her. She does not tie Craig's alleged statements to her rate of pay. Indeed, Craig joined Town Council many years after Icenhour first became the Town's FOIA Officer, so there is no indication that he played any role in setting her compensation. Two stray comments, remote in time, from a single Town Council member, do not comprise circumstances suggesting unlawful sex-based pay discrimination. As with her ADA claims, Icenhour simply has not alleged sufficient facts to show that she may be entitled to relief under Title VII.

For these reasons, I will grant the Motion to Dismiss as to Count VII. Because Icenhour verbally withdrew her Equal Pay Act claim at oral argument, I will also grant the Motion to Dismiss as to Count VIII.[2]

_____

[2] Because I have dismissed Icenhour's § 1983, ADA, Title VII, and Equal Pay Act claims, which provide the basis for federal question jurisdiction, I could decline to exercise supplemental jurisdiction over her two state law claims. 28 U.S.C. § 1367(c)(3). I exercise supplemental jurisdiction over Counts I and II, however, because plaintiff's counsel indicated several times during oral argument that he intends to move to amend the Complaint to add further factual allegations in support of the federal claims. In light

III.

In summary, I find that the present Complaint fails to state any claim upon which relief can be granted.  Accordingly, the Motion to Dismiss, ECF No. 4, is GRANTED.  Any request to amend the Complaint must be sought by a written motion including as an exhibit the proposed Amended Complaint, which motion must be filed within 14 days hereof.

It is so **ORDERED**.

ENTER:  February 3, 2020

/s/  *JAMES P. JONES*
United States District Judge

---

of that stated intention, I find that retaining jurisdiction over this case will best conserve judicial and party resources.